UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| DAVID MUSCIOTTO, | : | |
|    *Petitioner*, | : | |
| | : | |
| v. | : | No. 3:19-CV-559 (KAD) |
| | : | |
| ERIN NARDELLI, | : | |
|    *Respondent*. | : | October 10, 2019 |

**MEMORANDUM OF DECISION RE: MOTION TO DISMISS (DE#20)**

**Statement of the Case**

On January 9, 2019, the Petitioner, David Musciotto, a prisoner currently confined at the Northern State Prison in Newark, New Jersey, filed a Petition for Writ of Habeas Corpus in the district of New Jersey pursuant to 28 U.S.C. § 2241 against the Respondent, Erin Nardelli, for a violation of due process. Pet. (DE#1). Specifically, the Petitioner claims that a detainer lodged against him by the State of Connecticut for a probation violation charge prevents him from participating in early release or rehabilitative programs available through the New Jersey Department of Corrections ("NJDOC"). *Id.* at 6-7. For relief, he asks that this Court (1) provide him with "an opportunity to address [the detainer] in a timely manner," (2) "abate [the detainer] so [that he] may partake of programming intended by the NJDOC for [his] rehabilitation or transition back to society," or (3) "dissolve the detainer." *Id.* at 8. Because the Petitioner challenges a detainer lodged by the State of Connecticut, the court (Hillman, U.S.D.J.) *sua sponte* transferred the case to this court.[1]

---

[1] Understandably, the Petitioner named Erin Nardelli, the Administrator of the Southern State Correctional Facility in Delmont, New Jersey, where the Petitioner was previously confined as the Respondent. Upon transfer to this court, the State of Connecticut, became the true Respondent in this case. The Clerk is therefore directed to terminate Erin Nardelli and list the State of Connecticut as the Respondent in this case.

In response to an order to show cause issued by this Court, the Respondent moved to dismiss the petition on two grounds: (1) an arrest warrant for a violation of probation charge does not trigger the protections of the Interstate Agreement on Detainers ("IAD"), and (2) to the extent the Court interprets the Petitioner's claim as a violation of his constitutional right to a speedy trial, the Petitioner has failed to state such a claim. The Petitioner filed an amended opposition[2] to the Respondent's motion on August 19, 2019 in which he clarifies that while he "is not concerned with speedy trial," the unnecessary delay caused by the detainer combined with state officials' refusal to respond to his letters requesting relief violate his right to due process. He also argues that the IAD should be liberally interpreted to apply to all detainers, including those for violation of probation charges. For the following reasons, the motion to dismiss is GRANTED.

**Standard of Review**

This Court reviews a motion to dismiss a habeas petition according to the same principles as a motion to dismiss a civil complaint under Fed. R. Civ. P. 12(b)(6). *See Purdy v. Bennett*, 214 F. Supp. 2d 348, 353 (S.D.N.Y. 2002). To survive a motion to dismiss, the petition "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).

"Where . . . the [petition] was filed *pro se*, it must be construed liberally with 'special solicitude' and interpreted to raise the strongest claims that it suggests." *Hogan v. Fischer*, 738 F.3d 509, 515 (2d Cir. 2013) (quoting *Hill v. Curcione*, 657 F.3d 116, 122

---

[2] The Petitioner filed an initial opposition on August 14, 2019. He later advised the Court by letter that he intended to file a typed, amended opposition to the motion. The Court accepts the Petitioner's typed, amended opposition as the operative response.

2

(2d Cir. 2011)). Nevertheless, a *pro se* petition still must "state a claim to relief that is plausible on its face." *Mancuso v. Hynes*, 379 F. App'x 60, 61 (2d Cir. 2010) (quoting *Ashcroft,* 556 U.S. at 678). In deciding a motion to dismiss, the Court may "take judicial notice of public records such as pleadings, orders, judgments, and other documents from prior litigation, including state court cases." *Lynn v. McCormick*, No. 17-CV-1183 (CS), 2017 WL 6507112, at *3 (S.D.N.Y. Dec. 18, 2017) (citing *Lou v. Trutex, Inc.*, 872 F. Supp. 2d 344, 349 n.6 (S.D.N.Y. 2012)); *see also Samuels v. Air Transport Local 504*, 992 F.2d 12, 15 (2d Cir. 1993).

**Procedural History**

The Petitioner's prosecution history is not in dispute. On July 1, 2015, the Petitioner pleaded guilty in the Connecticut Superior Court to unlawful restraint in the first degree[3] and carrying a dangerous weapon.[4] *State v. Musciotto*, No. A05D-CR14-0151059-S (Conn. Super. Ct. July 1, 2015). The state court imposed a total effective sentence of five years of incarceration, execution suspended after eighteen months, and three years of probation. *Id.* At the Petitioner's request, supervision of his probationary term was transferred to the State of New Jersey pursuant to Connecticut's Interstate Compact for Adult Offender Supervision.[5] *See* Pet'r's Attach. 2 (DE#1-3), 14; Pet'r's Attach. 3 (DE#21), 4.

On May 4, 2017, New Jersey authorities arrested the Petitioner and subsequently charged him with manufacturing or distributing a controlled substance or intent to do so,

---

[3] Conn. Gen. Stat. § 53a-95.

[4] Conn. Gen. Stat. § 53-206.

[5] Conn. Gen. Stat. § 54-133.

3

in violation of N.J. Stat. Ann. § 2C:35-5a(1). On March 23, 2018, the New Jersey Superior Court sentenced him to five years of incarceration.

Connecticut authorities subsequently issued an arrest warrant charging the Petitioner with violating his probation and lodged a detainer in the NJDOC facility where he was confined. Pet'r's Attach. 3 at 4. The Petitioner then wrote letters to both Connecticut and New Jersey officials complaining that the detainer was preventing him from receiving minimum security status and/or participating in rehabilitative programs while serving his New Jersey sentence, to include the potential for early release to a halfway house or rehabilitation facility. *See* Pet'r's Attach. 2 at 1-17. Accordingly, he sought immediate transfer to Connecticut under the IAD so he could address the violation of probation charge. The New Jersey authorities denied his request on the ground that the IAD does not apply to detainers based on violation of probation charges. Pet'r's Attach. 2. at 3; Pet'r's Attach. 3 at 5. They informed him that "[i]t is permissible, however, to resolve this matter via [video conference], should the Court in Connecticut be amenable." Pet'r's Attach. 3 at 5. On March 5, 2019, Connecticut authorities responded to the Petitioner's letters seeking relief, stating that they are unable to execute the arrest warrant or take custody of him until he completes his sentence in New Jersey. *Id.* at 4. They also informed him that they are "unable to conduct remote arraignments or hearings from out of state facilities." *Id.* The Petitioner remains incarcerated in New Jersey.

**Discussion**

The Petitioner purports to bring this petition under 28 U.S.C. § 2241. Section 2241 authorizes "[t]he Supreme Court, any justice thereof, the district courts and any circuit judge" to grant writs of habeas corpus within their respective jurisdictions. 28

U.S.C. § 2241(a). "The writ of habeas corpus shall not extend to a prisoner unless . . . [h]e is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2241(c)(3). This provision of § 2241 "generally permits federal prisoners to challenge the execution of a sentence, including the computation of the sentence and parole decisions, rather than the imposition of that sentence or the underlying federal conviction . . ." *Blanchard v. New York*, No. 9:18-CV-0448 (GTS/CFH), 2018 WL 2324054, at *2 (N.D.N.Y. May 22, 2018) (citing *Cook v. New York State Div. of Parole*, 321 F.3d 274, 278 (2d Cir. 2003)); *see also Jiminian v. Nash*, 245 F.3d 144, 146 (2d Cir. 2001). In this case, however, the Petitioner is a state prisoner, not a federal prisoner, and he is challenging a detainer lodged by another state jurisdiction.

A prisoner's challenge to a detainer is not a challenge to the validity or imposition of a state court sentence insofar as it does not seek to change the fact or duration of a sentence. Rather, it is more akin to a challenge to the *execution* of a sentence. *See e.g. Roberts v. Commonwealth of Pennsylvania Bd. of Probation & Parole*, No. 09-0609 (RMB), 2009 WL 1351674, at *2 (D.N.J. May 12, 2009). And challenges to the *execution* of a state sentence, of the type presented here, must be brought pursuant to 28 U.S.C. § 2254. *Cook v. New York State Div. of Parole,* 321 F.3d 274, 278 (2d Cir. 2003). In *Cook,* the petitioner, a state prisoner, sought to avoid the prohibition against successive habeas petitions by bringing his petition pursuant to § 2241 relying on cases in which such petitions were permitted when brought by federal prisoners. The Court of Appeals held that "because a *federal* prisoner cannot challenge the *execution* of his or her sentence by a motion under [§] 2255, he or she must resort to a [§] 2241 petition to do so. A state prisoner, such as Cook, by contrast, not only may but according to the terms of [§] 2254

5

must, bring a challenge to the execution of his or her sentence … under [§] 2254." (emphasis original) *Id.* at 278; *see also, In Re: Wright,* 826 F.3d 774, 778 (4th Cir. 2016) ("Almost every circuit has addressed some version of the broader question at play here – that is, whether convicted state prisoners' petitions challenging the execution of a sentence are to be governed by § 2241 or § 2254. The majority view is that § 2241 habeas petitions from convicted state prisoners challenging the execution of a sentence are governed by § 2254") (collecting cases). Therefore, although filed under § 2241, the Court construes this Petition as one governed by § 2254. *See Cook*, 321 F.3d at 278 ("[I]f an application that should be brought under 28 U.S.C. § 2254 is mislabeled as a petition under [§] 2241, the district court must treat it as a [§] 2254 application instead."); *Manns v. Martinez*, No. 3:08-CV-752 (JCH), 2008 WL 5104809, at *1 (D. Conn. Dec. 1, 2008) (construing federal prisoner's petition challenging Connecticut state detainer under IAD as filed under § 2254); *Blanchard,* 2018 WL 2324054, at *2 (Noting that a state court prisoner challenging a detainer must proceed pursuant to § 2254).

Section 2254 mandates that district courts "entertain an application for a writ of habeas corpus in behalf of a person in custody pursuant to the judgment of a State court only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a); *Blanchard*, 2018 WL 2324054, at *2. In addition, a petition for writ of habeas corpus under § 2254 may not be granted "unless it appears that the applicant has exhausted his state court remedies. 28 U.S.C. § 2254(b)(1)(A). In order to properly exhaust his state court remedies, the Petitioner must present the factual and legal bases of his federal claims to the highest state court capable of reviewing them and utilize all available means to secure appellate review of his claims.

6

*See Galdamez v. Keane*, 394 F.3d 68, 73-74 (2d Cir. 2005). Failure to exhaust state court remedies may be excused only if "there is no opportunity to obtain redress in state court or if the corrective process is so clearly deficient to render futile any effort to obtain relief." *Duckworth v. Serrano*, 454 U.S. 1, 3 (1981) (*per curiam*).

Here, the Petitioner has not exhausted his state court remedies. Although he wrote letters to the State's Attorney, his probation officer, and the state court where his probation violation charge is pending, he has not challenged the detainer through a cognizable state court proceeding such as a petition for writ of habeas corpus or writ of mandamus. *See Braden v. 30th Judicial Circuit Court*, 410 U.S. 484, 489-90 (1973) (state prisoner must exhaust all available state remedies before filing habeas petition attacking state detainer); *Miller v. State*, No. 557570, *Purtill, J.T.R.*, 2001 WL 951301, at *1 (Conn. Super. Ct. July 20, 2001) (petitioner sought state writ of mandamus to release him from custody for violation of IAD). Indeed, Courts in this Circuit have dismissed § 2254 petitions challenging state detainers for failure to exhaust state court remedies. *See Blanchard*, 2018 WL 2324054, at *5; *Manns*, 2008 WL 5104809, at *2.

The court would normally dismiss a petition without prejudice to refiling upon proper exhaustion without addressing the merits of the claim(s) asserted therein. But here, as shown below, the Petitioner asserts a claim under the IAD that the United States Supreme Court has considered and rejected. Thus, the court addresses the merits of that claim.

The IAD, 18 U.S.C.A. App. 2, "is a compact among 48 states, the District of Columbia, and the Federal Government that prescribes procedures for a participating state to gain custody of a prisoner incarcerated in another jurisdiction in order to try him

7

on criminal charges." *United States v. Collins*, 863 F. Supp. 102, 104 (E.D.N.Y. 1994). It "is designed to encourage 'the expeditious and orderly disposition of charges outstanding against a prisoner and determination of the proper status of any and all detainers[6] based on untried indictments, informations, or complaints.'" *Id.* (quoting *United States v. Cephas*, 937 F.2d 816, 818 (2d Cir. 1991)); *see also Carchman v. Nash*, 473 U.S. 716, 720 (1985). Thus, the purpose of the IAD is "to limit the potentially adverse effect upon a prisoner's treatment and rehabilitation that may be posed by the pendency against him of a detainer based upon an untried charge." *Collins*, 863 F. Supp. at 104 (citing 18 U.S.C.A. App. 2, § 2, Art. I).

Article III of the IAD establishes the procedure by which a prisoner incarcerated in one state (the sending state) may demand the speedy disposition of "any untried indictment, information or complaint on the basis of which a detainer has been lodged against the prisoner" by another state (the receiving state). *Carchman*, 473 U.S. at 720. In accordance with Article III, the warden of the facility where the prisoner is confined must inform the prisoner that a detainer has been lodged and that the prisoner may request a final disposition of the indictment, information, or complaint upon which it is based. *Id.* at 721. If the prisoner requests such a final disposition, the warden must forward it to the receiving state along with a certificate explaining the prisoner's terms of confinement. *Id.* The receiving state must then bring the prisoner to trial within 180 days, absent a showing of good cause, or, alternatively, dismiss the indictment, information, or complaint with prejudice. *Id.*

---

[6] "A detainer is a request filed by a criminal justice agency with the institution either to hold the prisoner for the agency or to notify the agency when release of the prisoner is imminent." *Carchman v. Nash*, 473 U.S. 716, 719 (1985).

8

As noted, and unlike *Blanchard* and *Manns*, which both involved challenges to a detainer under the IAD based on unresolved criminal charges, the detainer in this case is based on a violation of probation charge. In *Carchman*, the United States Supreme Court expressly held that the phrase "untried indictment, information or complaint" in Article III of the IAD refers to pending criminal charges, not a probation violation charge. 473 U.S. at 725. The probation violation charge is generally based on the criminal offense of which the prisoner has already been convicted and is serving his sentence in the sending state. *Id.* Thus, the Court held that the protections established by Article III of the IAD do not apply to probation violation detainers. *Id.* at 734. Based on this well-established precedent, the Petitioner cannot obtain any relief from this court regarding the detainer under the terms or protections of the IAD.[7]

Based on the foregoing, in addition to failing to exhaust his state court remedies, the Petitioner has failed to state a plausible claim for relief regarding the failure of state authorities to bring him to Connecticut pursuant to the IAD. The Petition is therefore **DISMISSED with prejudice** as to the claims asserted under the IAD and **DISMISSED without prejudice** to refiling if the Petitioner exhausts his state court remedies related to any other federal constitutional or statutory claims not addressed herein. The Petitioner may file a motion to reopen the case and file an amended Petition **after proper exhaustion of these claim(s) in state court**. The Clerk of the Court is directed to close

---

[7] The Petitioner does not dispute that the procedures outlined in Article III do not apply to probation violation detainers. He, nevertheless, contends that there may be other provisions of the IAD which afford him protections in this situation. He is mistaken. The Supreme Court's conclusion in *Carchman* was not solely based on the language of Article III. *See Carchman*, 473 U.S. at 724-25. The Court also examined other provisions of the IAD and statements from its drafters which evince an intent for the use of the word "charges" to apply only to criminal charges, not those pertaining to parole or probation violations. *See id.* at 725-29.

9

this file. Because the Petitioner has not made a substantial showing of the denial of a constitutional right, a certificate of appealability will not issue. *See* 28 U.S.C. § 2253(c)(2).

**SO ORDERED.**

Dated this 10th day of October 2019 at Bridgeport, Connecticut.

_____/S/_____
Kari A. Dooley
United States District Judge